STATE OF CONNECTICUT *v.* CONFESSOR TORRES
(12321)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued October 3—decision released November 26, 1985

*Jeffrey R. Van Kirk,* with whom, on the brief, was *Susan M. Wright,* legal intern, for the appellant (defendant).

*John M. Massameno,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, *Kevin McMahon,* assistant state's attorney, and *William Domnarski,* deputy assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Confessor Torres, after his motions to suppress tangible evidence and to suppress his statements to the West Hartford police had been denied by the trial court, pleaded nolo contendere to one count of illegal possession of narcotics in violation of General Statutes § 21a-279 (a).[1] His plea was

---

[1] "[General Statutes (Rev. to 1983)] Sec. 21a-279. (Formerly Sec. 19-481). PENALTY FOR ILLEGAL POSSESSION. SUBSTITUTION OF MEDICAL TREATMENT

entered under General Statutes § 54-94a.[2] He was found guilty and was sentenced to the custody of the commissioner of correction for a term of three years. Execution of the sentence was suspended and he was placed on probation for a period of three years. The defendant appeals claiming that the trial court erred in denying his motions to suppress. We find no error.

At the hearing on the defendant's motions to suppress, the trial court found the following relevant facts: On April 4, 1983, officers of the West Hartford police department executed a valid search warrant for apartment D-4 at 90 Kane Street in West Hartford and the person of Victor Rivera, a resident of that apartment. There was nobody at home when the police arrived, and they were admitted by a manager with a passkey. During the search the police found approximately two ounces of cocaine.[3] About one hour after the officers

---

FOR CRIMINAL SANCTIONS. (a) Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than three thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years, or be fined not more than five thousand dollars, or be both fined and imprisoned; and for any subsequent offense may be imprisoned not more than twenty-five years, or be fined not more than ten thousand dollars, or be both fined and imprisoned."

[2] "[General Statutes] Sec. 54-94a. CONDITIONAL NOLO CONTENDERE PLEA. APPEAL OF DENIAL OF MOTION TO SUPPRESS OR DISMISS. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[3] In his memorandum of decision, Judge Bieluch refers to two grams of cocaine. This is an obvious misstatement, as the only evidence elicited at the hearing was that approximately two ounces of cocaine had been found.

commenced searching, Rivera entered the apartment accompanied by the defendant, Torres, and a third man. Immediately upon the three men entering the apartment, the police inquired as to the identity of Victor Rivera. When Rivera identified himself he was placed under arrest. He was then searched, and cocaine was found on his person. While Rivera was being searched the defendant was told to sit at a table in the apartment.

One of the police officers, Detective Joseph J. Glowacki, then advised Rivera of his *Miranda* rights. See *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Before commencing the recitation of rights, he told the defendant and the third man to listen as the advisement of rights also applied to them. After the three had been advised, Glowacki asked the defendant if he understood his rights and the defendant indicated that he did.

Another of the officers, Detective John J. Looby, Jr., after he had completed the search of Rivera, turned his attention to the defendant and asked him for identification. The defendant said that he was a Hartford fireman and produced a city of Hartford firefighter's photo identification card. Looby then asked the defendant if he had any narcotics. The defendant responded that he had a little for his personal use and produced from his wallet a foil packet which he turned over to Looby. The packet was subsequently determined to contain cocaine. That the defendant was detained only briefly before he produced the cocaine is implicit in the sequence of events recited in the court's memorandum of decision.

The defendant was arrested and taken to the West Hartford police station. There he again received *Miranda* warnings and signed a form indicating that he had been advised of his rights, fully understood them and voluntarily waived them. He gave a written statement which said, in summary, that just before enter-

ing the apartment Rivera had given him the foil packet, but that he did not know what it was. He assumed, however, that it was cocaine and he felt that he was going to be in trouble so he gave the packet to the police officer when the officer inquired "so he would not find any on me if he searched me."

The defendant contends that his initial detention was illegal and violative of his rights under the fourth and fourteenth amendments to the United States constitution.[4] He argues therefore that the tangible evidence seized and both his statements given on April 4, 1983, should be suppressed as "fruit of the poisonous tree." See *Wong Sun* v. *United States,* 371 U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). Alternatively, he maintains that, even if legally seized under the fourth amendment, he did not voluntarily waive his *Miranda* rights at Rivera's apartment and that therefore both his statement at the apartment and his statement at the police station should have been suppressed. It is the defendant's argument that his written statement at the police station was the result of his prior illegally obtained oral statement at the apartment. He claims that he had let "the cat out of the bag" by the illegally extracted admission and that he was ever thereafter subjected to the psychological and practical disadvantages incurred by his admission. *United States* v. *Bayer,* 331 U.S. 532, 540, 67 S. Ct. 1394, 91 L. Ed. 1654 (1947). The defendant also claims that when he handed the foil packet to Looby he was subjected to a search without probable cause or valid consent, and that the packet should therefore be suppressed.

---

[4] Despite the defendant's apparent concession at oral argument, the legality of the defendant's detention is a crucial issue in this case. If he had been illegally detained he could not have given a valid consent to his subsequent search; *United States* v. *Thompson,* 712 F.2d 1356, 1361 (11th Cir. 1983); and he could not, despite adequate *Miranda* warnings, have given a valid confession; *Brown* v. *Illinois,* 442 U.S. 590, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975); unless they were sufficiently attenuated from the illegal detention.

The trial court found that the defendant had not been illegally detained, that he had validly consented to a search when he handed the packet of cocaine to Looby and that he had voluntarily waived his *Miranda* rights at Rivera's apartment. The trial court therefore denied the defendant's motion to suppress the cocaine and also denied the defendant's motion to suppress his statements.

"On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980); see Practice Book § 3060D. The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts. *State* v. *Lasher,* 190 Conn. 259, 267, 460 A.2d 970 (1983).

The trial court cited *Michigan* v. *Summers,* 452 U.S. 692, 705, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981), as the basis for its conclusion that the defendant was not illegally detained. *Summers* held that the police may detain an "occupant" of premises while a search warrant is being executed. In this case, the defendant was a visitor to Rivera's apartment and not an "occupant" as it appears that term may have been used in *Summers.* Even if *Summers* did not justify the defendant's detention, however, the police were nonetheless justified in relying upon the doctrine of *Terry* v. *Ohio,* 392 U.S. 1, 29–30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), if they had a reasonable and articulable suspicion that the defendant might be involved in criminal activity. 2 LaFave, Search and Seizure (1985) § 4.9.

Here the police had found approximately two ounces of cocaine in their search of Rivera's apartment and then found cocaine on Rivera, the defendant's companion, when he was searched. In addition, the affidavit supporting the search warrant, which was obtained by Looby and Glowacki on April 4, recited that on April 3,

the previous day, an informant had purchased cocaine at Rivera's apartment and had seen Rivera and an unknown Spanish male cutting and packaging cocaine from a large chunk on the kitchen table.

Under these circumstances the police had at least a reasonable and articulable suspicion based on objective facts that the defendant might be engaged in criminal activity. *Brown* v. *Texas,* 443 U.S. 47, 52, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979). Therefore, they were justified in detaining him briefly while they sought proof of his identity and asked questions which would either confirm or dispel their suspicions. *Florida* v. *Royer,* 460 U.S. 491, 497, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983); *United States* v. *Brignoni-Ponce,* 422 U.S. 873, 881–82, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975); *United States* v. *Merritt,* 736 F.2d 223, 230 (5th Cir. 1984); *United States* v. *Bautista,* 684 F.2d 1286, 1290 (9th Cir. 1982); *United States* v. *Oates,* 560 F.2d 45, 63 (2d Cir. 1977); *State* v. *Braxton,* 196 Conn. 685, 689, 495 A.2d 273 (1985); *State* v. *Januszewski,* 182 Conn. 142, 149–50, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). The length of the defendant's detention was certainly not unreasonable. See *United States* v. *Sharpe,* 470 U.S. 765, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985). The trial court's conclusion that the defendant was legally detained was not erroneous. See *State* v. *Zindros,* 189 Conn. 228, 238, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984).

The trial court also concluded that there was a valid consent to search when the defendant turned over the cocaine to Looby. A person may waive his fourth amendment protection by consenting to a warrantless search. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 222, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). In order to introduce the evidence obtained in a consensual search, the state must establish that consent was freely and

voluntarily given. *Bumper* v. *North Carolina,* 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968); *State* v. *Reddick,* 189 Conn. 461, 468, 456 A.2d 1191 (1983). Whether consent was freely and voluntarily given is a question of fact to be determined from the totality of all the circumstances. *Schneckloth* v. *Bustamonte,* supra, 227. No one factor is controlling. *State* v. *Reddick,* supra, 469.

In this case, the trial court found that there had been no threats or promises to the defendant, that no firearms had been displayed and that the defendant would not have been searched after he had been identified were it not for his responsive surrender of the cocaine. The trial court also had before it evidence that the defendant was twenty-six years old, had completed the eleventh grade, had attained his high school equivalency, spoke English, could read and write and was a Hartford fireman. Further, at the same time that he handed the foil packet to the officer; *United States* v. *Hardin,* 710 F.2d 1231, 1236 (7th Cir. 1983); he had been informed of his rights and therefore was on notice that he did not have to cooperate with the police. *United States* v. *Cepulonis,* 530 F.2d 238, 244 (1st Cir. 1976).

When the totality of the circumstances is considered, the trial court's finding that the defendant voluntarily consented to a search is not clearly erroneous. *United States* v. *Bradley,* 455 F.2d 1181, 1185 (1st Cir. 1972); *State* v. *Zindros,* supra. The fact that the defendant thought he might be searched and was therefore faced with a difficult choice of options which may have exerted pressure on him is not the deliberate or ignorant violation of personal rights that renders apparent consent ineffective. See *Gorman* v. *United States,* 380 F.2d 158, 165 (1st Cir. 1967).

The trial court also found that the defendant was given and voluntarily waived his *Miranda* rights at

Rivera's apartment. It therefore denied the motion to suppress the defendant's statements. There was ample evidence to support the trial court's conclusion and it was therefore not clearly erroneous. *State* v. *Zindros,* supra, 238. This finding by the trial court also was not necessary. The defendant was detained briefly for investigation. We have held earlier in this opinion that his detention was based on reasonable suspicion and was a valid *Terry* stop. *Miranda* warnings therefore were not required.

"Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose 'observations lead him reasonably to suspect' that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to 'investigate the circumstances that invoke suspicion.' *United States* v. *Brignoni-Ponce,* 422 U.S. 873, 881, 95 S. Ct. 2574, 2580, 45 L. Ed. 2d 607 (1975). '[T]he stop and inquiry must be "reasonably related in scope to the justification for their initiation." ' Ibid. (quoting *Terry* v. *Ohio,* supra, 392 U.S., at 29, 88 S. Ct. at 1884.) Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that *Terry* stops are subject to the dictates of *Miranda.*" *Berkemer* v. *McCarty,* 468 U.S. 420, 439–40, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984).

The defendant's final claim is that the trial court erred in refusing to suppress his statement made at the West Hartford police headquarters. This claim hinges on the defendant's prior claims that he was ini-

tially illegally detained and that his statement at Rivera's apartment was obtained in violation of his *Miranda* rights. Since we have ruled adversely to the defendant on both those claims, this claim lacks continuing vitality. The trial court did not err in refusing to suppress the defendant's statement given at police headquarters.

The defendant entered his plea of nolo contendere under General Statutes § 54-94a which specifically applies to motions to suppress evidence based on an unreasonable search or seizure, a fourth amendment question. Since the trial court and the parties appear to have contemplated that this appeal would encompass both the defendant's fourth amendment claims and his *Miranda* claims, and since the facts on which both claims are based are intertwined, we have, in the interest of fairness and judicial economy, considered both claims on this appeal.

There is no error.

In this opinion the other judges concurred.