[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO SUPPRESS
On July 2, 1992, the defendant, Charles McGee, moved to suppress the evidence resultant from a search and seizure by the Milford Police Department of certain medical records and test results regarding the defendant's blood/alcohol level. In his motion brought pursuant to 820 et seq. of the Connecticut Practice Book, the defendant claims that his medical records and test results were obtained in contravention of the Connecticut General Statutes in that a search warrant was neither sought nor issued by a Judge of the Superior Court and that any purported waiver of the warrant requirement or consent to the search was not made voluntarily, knowingly and intelligently.
FACTUAL BACKGROUND
At approximately 8:25 p.m. on October 8, 1991, Officer Bruce H. Carney, Milford Police Department, was parked in his cruiser observing traffic on Boston Post Road in Milford. Officer Carney heard two vehicles collide, one of which was a motorcycle being operated by the defendant. A westbound automobile had taken a left turn in front of the defendant's eastbound motorcycle. The defendant, who was not wearing a helmet, was thrown from CT Page 11132 his motorcycle and was approximately two feet from impact with the ground when first observed by Officer Carney. the defendant sustained serious injuries as a result of the accident including a closed head injury with concussion, a fracture tibial plateau with tear of posterior cruciate ligament right knee, and lacerations.
Officer Carney responded very quickly to the defendant who lay in the road. Officer Carney asked the defendant his condition to which he received no response. Officer Carney did not detect an odor of alcohol from the defendant when he was positioned over him.
With the arrival of other officers and paramedics to attend to the defendant, Officer Carney began his investigation concerning the cause of the accident. Officer Carney determined that the operator of the automobile was at fault for the accident, and that the defendant was not at fault. The automobile operator was given a summons for making an improper turn.
Subsequently, Officer Carney was informed that paramedics had detected an odor of alcohol from the defendant when transporting him to the hospital. Officer Carney went to the Milford Hospital in order to exchange information from the automobile operator with the defendant, arriving at the emergency room approximately 45 minutes after the accident. Although Officer Carney did not smell alcohol emanating from the defendant at the hospital, he did present the defendant a form entitled "CONSENT TO INSECTION (sic) AND COPYING OF HOSPITAL RECORDS." Officer Carney felt that the defendant might have been legally intoxicated at the time of the accident and wanted the blood test results from the hospital, hence the consent from. Upon the arrival of Sergeant Raymond Paskiewicz, Milford Police Department, the consent form was executed by the defendant. Sergeant Paskiewicz informed the defendant that the defendant's condition was a part of the investigation and that he had a right to refuse to sign the consent form.
The defendant signed the consent form, but the handwriting bears no resemblance to his ordinary handwriting. both Officer Carney and Sergeant Paskiewicz thought the defendant was alert, responsive and oriented to time, place and person.
The records of the paramedics disclose that the defendant was confused, didn't know the day or date, his telephone number or address. The emergency room records disclose that the defendant was vague on arrival in the ambulance, could not remember where he was prior to coming to the emergency room. The defendant was admitted to the hospital with multiple injuries described above, including a serious head injury, broken right knee, and lacerations. A neurosurgical consultation was obtained since there was some CT Page 11133 question as to whether the defendant had suffered a cerebral hemorrhage. After undergoing numerous test, the final diagnosis was that the defendant had a closed head injury with concussion, but without any hemorrhage. The defendant was discharged from the Milford Hospital after two weeks of testing, observation, and treatment.
LEGAL DISCUSSION
Here, the defendant has filed a Motion to Suppress certain medical records and test results of the Milford Hospital regarding the defendant's blood/alcohol level. The defendant has advanced two arguments in support of his motion. The defendant's first argument is that the blood/alcohol test results were obtained by the State in contravention of the clear dictates of the Connecticut General Statutes. Connecticut General Statutes14-227a(1) provides as follows:
 Seizure and admissibility of chemical analysis of hospital blood sample of injury operator. Notwithstanding the provisions of subsection (c) of this section, evidence respecting the amount of alcohol or drug in the blood of an operator of a motor vehicle involved in an accident who has suffered or allegedly suffered physical injury in such accident, which evidence is derived from a chemical analysis of a blood sample taken from such person at a hospital after such accident, shall be competent evidence to establish probable cause for the arrest by warrant of such person for a violation of subsection (a) of this section and shall be admissible and competent in any subsequent prosecution thereof if: (1) The blood sample was taken in the regular course of business of the hospital for the diagnosis and treatment of such injury; (2) the blood sample was taken by a person licensed to practice medicine in this state, a qualified laboratory technician, an emergency technician II or a registered nurse; (3) a police officer has demonstrated to the satisfaction of a judge of the superior court that such officer has reason to believe that such person was operating a motor vehicle while under the influence of intoxicating liquor or drug or both and that the chemical analysis of such blood sample constitutes evidence of the commission of the offense of operating a motor vehicle while under the influence of intoxicating liquor or drug or both in violation of subsection (a) of section 14-227a; and (4) such judge has issued a search warrant in accordance with section 54-33a authorizing the seizure of the chemical analysis of such blood sample. (Emphasis supplied.)
It is undisputed that there was no search warrant issued by a judge CT Page 11134 which authorized the seizure of the hospital records involved here. The defendant claims that the failure to comply with the dictates of Connecticut General Statutes 14-277a(1) mandates suppression of the hospital records. The defendant has provided no legal authority in support of that argument.
While one's private home may not be entered by law enforcement authorities to conduct a search or effect an arrest without a warrant, exceptions to that warrant requirement have been recognized where there has been valid consent or exigent circumstances exist. Steagald v. United States, 451 U.S. 204 (1981); Payton v. New York, 445 U.S. 573 (1980). "It is axiomatic `[a] warrantless search [or entry into one's home] is not unreasonable under either the four the amendment to the constitution of Connecticut if a person with authority to do so has freely consented. . . .' Schneckloth v. Bustamonte, 412 U.S. 218, 248, 93 S.Ct. 2041, 36 L. A.2d 790 (1978)." State v. Reagan, 209 Conn. 1, 7 (1988).
This court is unconvinced that hospital records concerning blood testing of injured operators suspected of having operated a motor vehicle under the influence of alcohol should be more sacrosanct than one's home. There is no basis to find that the various exceptions to the warrant requirements under the United States Constitution and the Connecticut Constitution do not apply to hospital records.
The second argument for suppression of these records advanced by the defendant is that any purported waiver of the warrant requirement by the defendant was not made voluntarily, knowingly or intelligently. The State has the burden of proving consent. Bumper v. North Carolina, 391 U.S. 543
(1968). to meet its burden the State must affirmatively establish by a preponderance of the evidence that the defendant's consent was in fact freely and voluntarily given. State v. Jones, 193 Conn. 70, 79 (1984); State v. Van Der Werff, 8 Conn. App. 330, 341 (1985).
Whether a consent to a warrantless search was voluntary is a factual question for this court to determine from the totality of the surrounding factual circumstances, including the characteristics of the accused. State Torres, 197 Conn. 620, 627 (1985); State v. Zindros, 189 Conn. 228, 244
(1983), cert. denied, 465 U.S. 1012 (1984).
Given the pertinent legal standards, this court finds that the consent to search executed by the defendant, Charles McGee, shortly after his arrival at the hospital was not freely and voluntarily given. The defendant, operating his motorcycle without a helmet, had been involved in a collision with an automobile. As a result of that collision, the defendant sustained extremely serious injuries including a closed head injury with concussion. CT Page 11135 The hospital records demonstrate the effects of those injuries on the defendant's faculties, including his memory. At the hospital the defendant at various times did not know the day or date, where he was, or what had happened to him. He was described by various personnel as "vague" and "confused." Additionally, the handwriting on the consent form executed by the defendant bears no resemblance to the defendant's ordinary handwriting.
Based on the foregoing, the court concludes that the defendant's consent to the seizure of his hospital records by the Milford Police Department was not freely and voluntarily given. Due to his serious physical injuries, the defendant was incapable of acting in his own interests at the time of the execution of the consent form. Schneckloth v. Bustamonte, supra at 222. Therefore, the defendant's consent to the seizure of his medical records was invalid.
CONCLUSION
The State has failed to prove by a preponderance of the evidence that the defendant's consent to the seizure of his medical records was freely and voluntarily obtained. Accordingly, the defendant's Motion to Suppress the results and evidence of the search and seizure of certain of his medical records and test results is granted. So ordered.