## STATE OF CONNECTICUT *v.* MAUREEN A. GILNITE (3225)

DUPONT, C.P.J., HULL and SPALLONE, Js.

Argued June 14—decision released August 13, 1985

*Vincent J. Giedraitis,* public defender, for the appellant (defendant).

*Patricia A. Swords,* assistant state's attorney, for the appellee (state).

HULL, J. This appeal arises out of the defendant's conviction, after a jury trial, on charges of larceny in the sixth degree, a violation of General Statutes § 53a-125b,[1] and of being a persistent larceny offender, a violation of General Statutes § 53a-40 (c).[2] She claims that the court erred (1) in denying her motion for a continuance, (2) in admitting evidence of her prior misconduct, (3) in denying her motion for a judgment of acquittal and (4) in denying her motion to dismiss the persistent larceny offender portion of the information. We find no error.

The jury in this case could reasonably have found the following facts: On December 3, 1983, Ernie Malago, a store detective at Caldor's department store in Mansfield, was positioned behind a one-way mirror in the western wall of the store, approximately ten feet above the floor. The mirror overlooked the shoe department. With him was his supervisor, Rodney Rowe.

---

[1] General Statutes § 53a-125b provides: "LARCENY IN THE SIXTH DEGREE: CLASS C MISDEMEANOR. (a) A person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a-119 and the value of the property or service is two hundred fifty dollars or less.

"(b) Larceny in the sixth degree is a class C misdemeanor."

[2] General Statutes § 53a-40 (c) provides: "A persistent larceny offender is a person who (1) stands convicted of larceny in the third degree in violation of the provisions of section 53a-124 in effect prior to October 1, 1982, or larceny in the fourth, fifth or sixth degree and (2) has been, at separate times prior to the commission of the present larceny, twice convicted of the crime of larceny."

At approximately 9 p.m., Malago and Rowe observed the defendant and her companion, David Monroe, in the shoe department. Monroe sat on the floor with his back to the mirror and the defendant, having tried on one of several pairs of shoes scattered around her, removed them from her feet and placed them in Monroe's hands. Monroe placed the shoes inside his jacket and partially zipped it up. Then, as the defendant put several other pairs of shoes back on the shelves, Monroe stood up and zipped his jacket up the rest of the way. Monroe then walked away from the defendant and out of the store without paying for the shoes. Malago apprehended Monroe outside the store and brought him to the office while Rowe apprehended the defendant. On that same day, she was charged with larceny in the sixth degree. On January 17, 1984, she pleaded not guilty to this charge and elected a jury trial.

On February 2, 1984, the case was pretried but no agreement was reached between the parties. Thereafter, on February 9, 1984, the defendant was charged, by a Part B information, with being a persistent larceny offender.

On February 29, 1984, the date of trial, the state filed a "substituted information" charging the defendant with larceny in the sixth degree, as before, but as an accessory pursuant to General Statutes § 53a-8.[3] The defendant renewed her not guilty plea and requested a ten day continuance to prepare her response to the substitute information. After argument on the continuance request, the state withdrew the substitute information and trial commenced on the original infor-

---

[3] General Statutes § 53a-8 provides: "CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

mation. The court, however, forewarned the defendant that the state would be permitted to request "an instruction on accessory." After trial, the jury of six returned a verdict of guilty on the larceny charge on March 5, 1984.

On March 19, 1984, the parties stipulated that the defendant had pleaded guilty to two larcenies on prior occasions, but that she had been sentenced on both on the same day. On March 20, 1984, after the defendant's motion to dismiss the Part B information was denied, the court accepted the defendant's plea of nolo contendere on the persistent larceny offender charge. She was then sentenced, on April 13, 1984, to four months for a violation of probation and to two years imprisonment, sentence suspended, followed by two years of probation on the larceny and peristent larceny offender charges. Thereafter, she filed the present appeal claiming the four errors described above.

The defendant's first claim is that the denial of her motion for a continuance, coupled with the court's decision to give an instruction on liability as an accessory, denied her due process since she did not learn that she was being charged as an accessory until the time of trial.

In her brief, the defendant concedes that "had the state elected not to file a Substitute Information, the court could have correctly charged the jury on [accessory liability] if the evidence warranted it." She argues, however, that if the state had followed that course, she would have been entitled to object to "certain evidence" and she could have requested a continuance on the ground that she had been surprised by the introduction of that evidence. Furthermore, the defendant claims that she was deprived of her right to file a bill of particulars, to examine prosecution documents and to move for disclosure of prosecution witnesses prior to trial.

"[T]he propriety of [such an 'accessory' charge] is predicated on the basis of the sufficiency of the evidence heard during the course of the trial, *not* on the mention of such charges in pretrial documents." (Emphasis in original.) *State* v. *Ferrara,* 176 Conn. 508, 513 n.2, 408 A.2d 265 (1979). We fail to see how the defendant was prejudiced by the instruction in this case. In fact, since she was forewarned before trial that the instruction would be given, the defendant was less surprised by it than she would have been had the instruction simply been requested and given after trial. Hence, we find that the court did not abuse its discretion in denying the continuance requested by the defendant.

The defendant's second claim of error is that the court erred in admitting evidence regarding two prior larcenies of which she had been convicted. The defendant argues that evidence of the larcenies in question, both of which also involved Monroe and which took place in Caldor's stores, was highly prejudicial and was of little probative value to the pending case.

The state, however, points out that "[s]uch evidence is admissible . . . when it is particularly probative in showing such things as intent, an element in the crime, identity, malice, motive or a system of criminal activity . . . ." *State* v. *Falby,* 187 Conn. 6, 23, 444 A.2d 213 (1982), quoting *State* v. *Turcio,* 178 Conn. 116, 129, 422 A.2d 749 (1979); see also McCormick, Evidence (3d. Ed.) § 190. " 'Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done.' " *State* v. *Falby,* supra. We conclude that the admission of the evidence in question did not constitute an abuse of discretion.

The evidence presented clearly showed a system of criminal activity on the part of the defendant. In each instance, the defendant selected items of women's apparel and turned them over to Monroe to be carried

out of the store; the defendant and Monroe left the store separately; the defendant denied her involvement in the crime and attempted to cast blame entirely upon Monroe. Thus, although the evidence was clearly damaging to the defendant, we agree with the trial court that its probative value outweighed its prejudicial effect.

The defendant's third claim is that the court erred in denying her motion for acquittal on the ground that the evidence was insufficient to support a finding that she was guilty beyond a reasonable doubt. We disagree.

The defendant argues that there is no evidence that she participated in Monroe's criminal act, or to "rebut the presumption that when David Monroe concealed the boots he did so for his own use." She argues, essentially, that the "evidence is consistent with at least two reasonable constructions and the one consistent with innocence must prevail."

In *State* v. *Dumlao,* 3 Conn. App. 607, 491 A.2d 404 (1985), this court stated, in reference to this type of argument, that it "is *not* a correct statement of our law." (Emphasis in original.) Id., 616. "The difference between the defendant's claim and [the correct statement of our law] is the difference between the jury's function in drawing inferences from specific facts or evidence and its function in coming to the ultimate conclusion as to guilt or innocence on the basis of all the evidence.

"It is clear that, in viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence." Id. The defendant is, in essence, asking us to replace the jury's overall evaluation of the evidence with our own. We will not do so.

Finally, the defendant argues that the court should have dismissed the Part B information against her because, although she pleaded guilty to the two earlier counts of larceny in the sixth degree on different dates, she was sentenced on both counts on the same date, and, thus, there was a single judgment of conviction. Hence, she claims that she was not "at separate times prior to the commission of the present larceny, twice convicted" as is required by General Statutes § 53a-40 (c).

The simple answer to this claim has been reiterated most recently in *State* v. *Martin,* 197 Conn. 17, 495 A.2d 1028 (1985). There the court held that "[a] plea of nolo contendere is a waiver of all nonjurisdictional defects, including federal constitutional claims, which might otherwise be raised by way of defense, appeal or collateral attack. *United States* v. *Warden of Attica State Prison,* 381 F.2d 209, 212 (2d Cir. 1967); *Dukes* v. *Warden,* 161 Conn. 337, 343, 288 A.2d 58 (1971), aff'd, 406 U.S. 250, 92 S. Ct. 1551, 32 L. Ed. 2d 45, reh. denied, 407 U.S. 934, 92 S. Ct. 2464, 32 L. Ed. 2d 817 (1972); *Consiglio* v. *Warden,* 160 Conn. 151, 166, 276 A.2d 773 (1970)." *State* v. *Martin,* supra, 25; see also *State* v. *Satti,* 2 Conn. App. 219, 221-23, 477 A.2d 144 (1984). Thus, by pleading nolo contendere to the charge of being a persistent larceny offender, the defendant waived her right to appeal this issue.

There is no error.

In this opinion the other judges concurred.